(27 App. Div. 162.)

YOUNGS v. STODDARD et al.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

1. CONDEMNATION PROCEEDINGS—AWARD—RIGHTS OF LIENHOLDER.

A person who has a lien upon the amount of an award made to another, in proceedings to condemn land to which he was not a party, is not required to wait until it has been paid to the latter, and then sue him for it, under Consolidation Act, § 993, but may, before such payment, maintain a direct action against the city and the parties interested, to secure the share to which he is entitled.

2. SAME—RIGHTS OF GRANTEE OF MORTGAGEE.

An owner of certain land on a street quitclaimed a tract tnereof, including one-half of the street, and took back from the grantee a contract under seal to pay to the grantor all moneys thereafter awarded to him for taking said land for a public use, and a mortgage thereof to secure performance of the contract. Shortly thereafter the grantor conveyed to plaintiff a lot of land on the street, together with right, title, and interest in one-half of the street in front thereof. Said half of the street thus conveyed was part of that already quitclaimed to the first grantee. Thereafter the street was taken for a public use, and an award made therefor to defendant, to whom it had been quitclaimed by the first grantee, subject to the agreement and mortgage. In an action in equity by plaintiff to secure a proportionate part thereof, *held*, that the lien on the land acquired by plaintiff, as grantee of the mortgagee, attached to the award which stood as a substitute therefor.

Appeal from special term.

Action by George G. Youngs against Charles A. Stoddard and others. Appeal from an interlocutory judgment sustaining the demurrer of the defendant Charles A. Stoddard, and also the joint demurrer of

the other defendants (except the city of New York), to the plaintiff's complaint. Reversed.

This is an action in equity to secure a proportionate part of an award made to the defendant Stoddard by commissioners of estimate and assessment appointed in a proceeding brought by the city to condemn certain lands in 182d street, between Audubon and Eleventh avenues. The facts alleged are substantially these: In December, 1889, certain of the defendants and others (who, for the sake of brevity, may be called the "Snowden Family") conveyed to Louisa J. Morgan, by warranty deed, a lot of land, 50 feet in width, upon the north side of 182d street, together with all their right, title, and interest in and to one-half of 182d street, "in front of and adjoining the premises so conveyed." Louisa J. Morgan subsequently conveyed the same premises to the plaintiff, who was her grantee thereof at the time the award in question was made. About a month prior to the conveyance to Louisa J. Morgan, the Snowden family and one John J. Vail executed, as part of one and the same transaction, three instruments, viz.: (1) A quitclaim deed (for a nominal consideration) from the Snowdens to Vail, of a large tract of land, including the one-half of 182d street in front of the premises subsequently conveyed to Morgan; (2) a contract, under seal, between Vail and the Snowdens (set up verbatim in complaint), whereby Vail agreed to pay to the Snowdens all moneys which he at any time thereafter might receive as damages awarded to him for the taking of said land for a public use; .(3) a mortgage given by Vail to the Snowdens to secure performance of the latter contract. Vail subsequently quitclaimed these premises for a nominal consideration to the defendant Stoddard, "subject to the terms, conditions, and agreement" between himself and the Snowdens. The city condemned the land in question for the opening of 182d street, and the commissioners awarded to Stoddard the sum of $4,755.50, for the land embraced within one-half of 182d street. This award was for a strip of 350 feet, in which the plaintiff's 50 feet were included. The plaintiff asks judgment that he be declared to be the owner of a proportionate part of the award made to Stoddard; that the proportionate part be ascertained; and that the city be directed to pay it over to him. He also asks that the deeds to Vail and to Stoddard be declared void.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Michael Fennelly, for appellant.
Carroll Berry, for respondents.

BARRETT, J.   We need not consider the question as to the validity of the deeds to Vail and Stoddard, because, assuming them to be valid, we think the complaint stated a good cause of action for the recovery of the plaintiff's proportionate part of the award in question.   The effect of the three instruments executed between the Snowden family and Vail was to vest in the former the right to have and receive whatever sums might be awarded as damages for the taking of the land in question for public use.   It will be observed that Vail gave the Snowdens a mortgage upon the very land which was contemporaneously quitclaimed to him, to secure his covenant with regard to the award.   Thus, the Snowdens, when they conveyed to Louisa J. Morgan, were at least mortgagees of the one-half of 182d street in front of the premises so conveyed; and their mortgage interest passed to her.   Certainly, every right which the Snowdens possessed under the transaction with Vail was, by their warranty deed to Morgan, conferred upon the latter.   Thus, the plaintiff, as the grantee of the mortgagee of the land in the street taken by the city, was equitably entitled to whatever award was made therefor.   The damages, when

awarded to Stoddard, became a substitute for the mortgage interest. As was said in Astor v. Miller, 2 Paige, 76:

"Upon the principles of equity, the mortgage then became a specific lien upon the fund, instead of the mortgagee's interest in that part of the land."

The rule laid down in this case has since been frequently applied, and has never been questioned. That rule is succinctly stated in the headnote as follows:

"Where either real or personal estate, upon which there is an outstanding mortgage, is turned into money, the rights of the mortgagee continue unaltered, and the court will direct the application of the moneys according to the rights of the parties as they existed previous to the alteration of the estate."

This case was reversed upon other questions in Astor v. Hoyt, 5 Wend. 603, but the rule in question was affirmed, and Chief Justice Savage said:

"That the mortgagees are entitled prima facie to so much of the fund as may be considered the substitute of that part of the premises taken from the operation of the mortgage, and appropriated to public use."

Applying these principles, it would seem quite clear that the plaintiff was entitled to his share of the award in question. Stoddard's claim is that he, and he alone, is entitled to the award, for the reason that the commissioners have awarded it to him, and that the award has been confirmed by the court. He admits, however, that, when he recovers the award from the city, the plaintiff will, under the statute (Consolidation Act, § 993), have a good cause of action against him at law for his proportionate share thereof. His contention is that, except so far as the statute gives that particular right of action, the plaintiff's rights are finally foreclosed by the confirmation of the commissioners' report. We think this position is unsound. The order confirming the commissioners' report is undoubtedly final and conclusive upon all parties interested; that is, as to the essential features of the proceeding. Thus, it is conclusive as to the condemnation of the land and the amount of the award. In re Department of Parks, 73 N. Y. 565. It also binds the city to pay the awards to the persons to whom they are specifically given. But even this latter obligation is limited to payments made without notice of adverse claims. Where such notice has been given, the city is not bound to pay the award to the person named in the commissioners' report. Indeed, it does so at its peril. Hatch v. Mayor, etc., 82 N. Y. 436. Its duty in that case is to interplead the rival claimants, or, if sued by the person named in the report, to move to substitute the adverse claimant as a party defendant, upon payment of the amount in dispute into court, as where an award is made to unknown owners. Barnes v. Mayor, etc., 27 Hun, 236. The right to the award, as between rival claimants thereto, who have not appeared before the commissioners, or there litigated their adverse claims, is a subsidiary incident to the main proceeding, but is not of its essence. All parties, whether they appeared or not, are undoubtedly foreclosed as to the amount of the award; but no one is foreclosed as to his right thereto unless he has actually submitted his claim to the arbitrament of the commissioners and the action of the court thereon. The governing principle is the same whether the commissioners make the

award to an unknown owner or to one whom they name as owner. That it was not the intention, as between the real owner and the person named as such in the commissioners' report, to finally foreclose the former, is apparent when we see that the statute itself confers a right of action, upon the person to whom the award of right belongs, to recover from its actual recipient the amount paid to the latter by the city, as so much money had and received for the real owner's use. Laws 1882, c. 410, § 993. These views are supported by the cases already cited, and still more directly by Spears v. Mayor, etc., 87 N. Y. 372, Cassidy v. Mayor, etc., 62 Hun, 358, 17 N. Y. Supp. 71, and Coutant v. Catlin, 2 Sandf. Ch. 485.

The respondents contend that the rule on this head, which was laid down by Judge Earl in the Spears Case, falls with the repeal of a provision in the consolidation act to which the learned judge referred as enforcing his position. That was a provision requiring the person to whom an award was made to prove his title, in the action which the statute authorized him to bring against the city for the recovery of the award. The argument from this was that the confirmation of the commissioners' report could not very well be final and conclusive upon the right of recovery when the person to whom the award was made was thus called upon again to prove his title. It is true that this provision was abrogated by chapter 449 of the Laws of 1895 (section 3), which takes away the former right of action, and substitutes therefor a summary application to require the comptroller to pay the amount awarded. It is also true that this summary application need not be founded upon further proof of title. The act of 1895 does not require this. But the fallacy of the respondents' position is in supposing that the rule to which we have referred was based wholly upon this requirement as to proof of title in the action to recover the award. That was one of the arguments, and a cogent one, in support of the rule. But it was by no means the only one. Other equally substantial reasons are given by Judge Earl in support of his position, such as the fact that the "ascertainment of the persons to whom damages were to be paid was merely incidental to the main purpose" of the proceeding, and the further fact, to which we also have adverted, that a right of action is given to the real owner to recover what he is justly entitled to, from the actual recipient. This latter consideration is quite as cogent as the requirement of further proof of title in the action (formerly given by the statute) to recover the award. We think it quite clear, both upon principle and authority, that the plaintiff here was not foreclosed of his right to a proportionate part of this award, either by the action of the commissioners or by the confirmation of their report.

The remaining question is whether he may maintain this action in equity to recover directly from the city. We see no reason why he cannot. The Spears Case is again a direct authority in support of such an action. It was there sustained, notwithstanding the proof that the person claiming the award adversely to the plaintiff was solvent. "It is true," said Judge Earl, "that he [the adverse claimant, Matthews] has been found solvent upon the trial of this action, but it would not be just to deprive the plaintiffs of the absolute responsi-

bility of the city, and turn them over to the mere personal security of Matthews." He added that the form of action in equity had "deprived neither the city nor Matthews of any substantial right," and that it was quite proper to have the adverse claims to the award determined in such an action. The fact that the award in that case was made to the nominal owner, subject in terms to the mortgage, does not substantially distinguish that case from the present. The principle is the same whether the mortgage was referred to by the commissioners in the absence of the mortgagee, or ignored. Why should the plaintiff here be required to await Stoddard's pleasure in asking for the main award? The statute gives the plaintiff no right of action against him until he has actually received the amount of the award. And no provision is made by which he can be compelled to apply for payment at any particular time. And, looking at the matter practically, what need is there for circuity of action, if Stoddard honestly intends to fulfill his covenant? But the original parties did not rely upon his naked covenant. That is plainly evidenced by the mortgage they took to secure it. Thus, as equitable mortgagee, the plaintiff had a lien upon the land. As such mortgagee, he has the same lien upon the present substitute for the land. Clearly, he may enforce that lien by a direct action in equity. If not, of what avail is his mortgage? It becomes meaningless if the plaintiff is limited to an action against Stoddard upon the covenant. It was because the original parties did not intend to be thus limited that the mortgage was given. It was given to secure the covenant, and it can effect the purpose for which it was thus given only in case the award is treated as subject to its lien, and payable directly to its holder.

Our conclusion is that the action was well brought, and that the demurrer to the complaint should have been overruled. It follows that the interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs; with leave to the defendants to answer over upon payment of the costs of this appeal and of the court below. All concur.